IN THE COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO
CIVIL DIVISION

JANE DOE,
c/o Marshall and Morrow LLC
250 Civic Center Drive
Suite 480
Columbus, OH 43215,

     Plaintiff,

v.

DIRECTIONS FOR YOUTH
 AND FAMILIES, INC.,
c/o Statutory Agent
Duane Casares
1015 Indianola Ave.
Columbus, OH 43201,

     Defendant.

CASE NO. 15CV-06-4683

JUDGE SHEERAN

**FIRST AMENDED COMPLAINT**

**Jury Demand Endorsed Hereon**

### I. Preliminary Statement

1. This action seeks compensatory and punitive damages; declaratory, injunctive, and equitable relief; prejudgment and post-judgment interest; costs; and attorneys' fees for the disability discrimination in violation of the Americans with Disabilities Act and the Ohio Laws Against Discrimination committed by Defendant in both terminating Plaintiff because of its (a) misperception that her disability – bipolar disorder – prevented her from competently performing her job duties based on her record of having that disability and an isolated episode, which required leave and a week of part-time employment, caused by the interaction of the disability and medications prescribed by her psychiatrist with the steroid Prednisone prescribed by a family physician when she contracted shingles; and/or (b) stereotypical perception that her bipolar disorder could not sufficiently be managed appropriately through medications prescribed by her

Exhibit I

psychiatrist; and failing to engage in an interactive process seeking a reasonable accommodation for mitigating the burden on its clients and its operations of future episodes.

## II.  Jurisdiction and Venue

2.  This action arises under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, as amended, and the Ohio Laws Against Discrimination, R.C. 4112.99.

3.  This Court has jurisdiction over this action by virtue of concurrent jurisdiction under the Americans with Disabilities Act, 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5(f)), pursuant to a Notice of Right to Sue issued by the Equal Employment Opportunity Commission on July 14, 2015, a true copy of which is attached as Exhibit A to this Complaint, and R.C. 2305.01.

4.  Venue lies in this forum because Plaintiff performed her job duties for Defendant in Franklin County, Ohio, and Defendant there terminated Plaintiff.

## III.  Parties

5.  Plaintiff Jane Doe was employed by Defendant as an Outreach Counselor from January 6, 2014, until August 25, 2014; earned approximately $24.15 an hour; received health insurance benefits as part of her compensation; is a Social Worker licensed by and in good standing with the State of Ohio; has a Bachelor's Degree with Honors and a Master's Degree in Clinical Social Work from the Ohio State University College of Social Work; has completed the coursework there for her Ph.D in social work, specializing in children and adolescent mental health; successfully held clinical and research positions involving mental health for nine years prior to becoming employed by Defendant; performed competently and without discipline for Defendant during her tenure; and is age 31. Plaintiff brings this action under the assumed name Jane Doe because this case involves highly confidential and sensitive medical information.

6. Defendant Directions for Youth and Families, Inc. is incorporated in Ohio as a non-profit corporation; provides behavioral and mental health services to families and children in central Ohio, particularly involving drug/alcohol abuse, violence, sexual abuse, family dynamics, parenting (including teen parenting), delinquency, teen pregnancy prevention, diversity and anger management in at-risk families and children, and after-school programs in the creative and performing arts, recreation, prevention activities, leadership development and life skills; is committed to empowering families and children to make sound choices and achieve promising futures; operates two Youth Centers (Short Stop and Ohio Avenue) and three offices; at all times material to this Complaint daily employed 15 or more full-time employees each week; had its headquarters in Columbus, Franklin County, Ohio; and engaged in an industry affecting interstate commerce.

## IV. Facts

7. For the past 15 years Plaintiff has suffered from Bipolar Disorder, a mental or psychological disorder.

8. Medications prescribed by Plaintiff's psychiatrist have usually controlled her Bipolar Disorder, and a episode has occurred less than once a year.

9. Plaintiff is aware of the symptoms that she is having a episode, sensitive to the effect of an episode, and able to minimize the impact of a episode on her and those with whom she comes into contact.

10. If Plaintiff stopped taking the medications prescribed by her psychiatrist her Bipolar Disorder would substantially limit her major life activities of learning, thinking, concentrating, sleeping, taking care of herself, and/or interacting with others.

11. When compared to the average person in the general population individuals with Bipolar Disorder who are not being treated with medications prescribed by a psychiatrist are significantly more restricted in the major life activities of learning, thinking, concentrating, sleeping, taking care of themselves, and/or interacting with others.

12. At all times material to this Complaint, Defendant perceived the condition of Bipolar Disorder as one which substantially limits the major life activities of learning, thinking, concentrating, sleeping, taking care of herself, and/or interacting with others.

13. At all times material to this Complaint, Defendant misperceived Plaintiff's Bipolar Disorder as one which, even when she is taking the medications prescribed by her psychiatrist, substantially limits her major life activities of learning, thinking, concentrating, sleeping, taking care of herself, and/or interacting with others.

14. Defendant assigned Frances Deutschle to supervise Plaintiff's job performance.

15. Approximately a month into her tenure, Plaintiff confided to Supervisor Deutschle that she suffered from Bipolar Disorder and, although episodes were rare, Supervisor Deutschle should watch out for symptoms of an episode, such as a noticeable change from her usual behavior in talkativeness, distractibility, agitation, irritability, grandiosity, sleeplessness, racing thoughts, and rapid speaking.

16. Based on her period of supervision of Plaintiff and knowledge of Plaintiff's experience, skills, academic achievements, temperament, and competent performance, Supervisor Deutschle responded that she was not concerned about Plaintiff having an uncontrollable episode.

17. On Friday, July 25, 2014, Plaintiff began to feel that something was wrong with her, called her psychiatrist, and asked if she could get an appointment.

18. The first available appointment was Thursday, July 31, 2014, and Plaintiff informed Supervisor Deutschle about her feeling, telephone call, and psychiatrist's appointment.

19. Concerned that she might be having an episode, Plaintiff asked Supervisor Deutschle to keep an eye on her and check her work.

20. At her psychiatrist's appointment on July 31, 2014, Plaintiff was diagnosed as having an episode and taken off full-time work until August 15, 2014, and released for part-time, four or five hours a day each week, through August 18, 2014, followed by a return to full-time work on August 25, 2014.

21. Plaintiff's leave and initial return to part-time work did not result in the loss to any family or youth served by Defendant of its services, and Defendant was able through rescheduling to cover for her absence.

22. Defendant has sufficient flexibility in its workforce composition to cover for employees who are absent due to illness, injury, vacation, and/or other short-term. *i.e.*, less than three weeks, needs.

23. Defendant regularly covers for employees who are absent due to illness, injury, vacation, and/or other short-term, *i.e.*, less than three weeks, needs.

24. While off work Plaintiff maintained frequent contact with Supervisor Deutschle.

25. During one conversation, Supervisor Deutschle asked whether Plaintiff's shingles and episode had been triggered by job stress.

26. Plaintiff did not believe so, but she sought the opinion of both her psychiatrist and family physician.

27. The psychiatrist opined that he did not believe she was overly stressed and he attributed the episode to the Prednisone.

28. The family physician opined that the more likely cause of the shingles was a change in medication for an unrelated condition.

29. Plaintiff relayed to Supervisor Deutschle what her psychiatrist and family physician had told her.

30. On August 18, 2014, when Plaintiff was working part-time, Supervisor Deutschle called Plaintiff to a meeting and explained that she had informed Clinical Director John Cervi about Plaintiff's disability and was told that Chief Executive Officer (CEO) Duane Casares had to be informed as well.

31. When Supervisor Deutschle informed CEO Casares, he asked whether there had been any complaints or patterns of inappropriate conduct by Plaintiff, and Supervisor Deutschle answered that none came to mind but she would review her supervision notes.

32. After Supervisor Deutschle reviewed her supervision notes she reported to CEO Casares that in three instances Plaintiff had exercised "poor judgment."

33. The instances Supervisor Dueschle observed of "poor judgment" were comparable in kind and degree to individuals she had supervised during the prior five years, especially those in their early tenure.

34. Supervisor Dueschle reviewed her supervision notes for the entire time of Plaintiff's employment and did not isolate the period when Plaintiff felt something was wrong with her.

35. CEO Casares decided that Plaintiff was not a "good fit" for her job and he was no longer comfortable with her making decisions on Defendant's behalf and had Supervisor Dueschle ask her to resign.

36. Plaintiff asked for an opportunity to consider what she should do, and Supervisor Dueschle agreed.

37. On the next day, August 19, 2014, Plaintiff reported for work, told Supervisor Dueschle that she did not want to resign, and requested a meeting with CEO Casares and Clinical Director Cervi.

38. Plaintiff worked the remaining of her scheduled shift on August 19, 2014, and was told by Supervisor Deutschle that CEO Casares would meet with Plaintiff at 11:00 a.m. the next day.

39. On August 20, 2014, Plaintiff met with CEO Casares and Human Resources Administrator Betty Seal.

40. CEO Casares characterized the three instances of "poor judgment" reported by Supervisor Deutschle as "rookie mistakes" that would not normally justify termination of an employee.

41. CEO Casares referred to Plaintiff's disability and an employment discrimination statute in words to the effect of, "I know all about the ADA [Americans with Disabilities Act], but let's be human here. This is just going to set you up for failure because of the episodic and unpredictable nature of your condition."

42. Plaintiff explained that her Bipolar Disorder was usually under control and the episode occurred, according to her psychiatrist, only because of a bad interaction with the steroid Prednisone she had been prescribed by a family physician when she contracted shingles.

43. CEO Casares responded, in words to the effect of, "It would be irresponsible for you to just walk in and out of client's lives," and, referring to the at-risk youth and families Defendant serves, he "just couldn't have you working with this population."

44. CEO Casares also threatened Plaintiff's Ohio Social Worker's License by saying that there would be more problems which he was obligated to report, he was a consultant for the licensure board, and her continued employment would not end well.

45. At no time was Plaintiff's employment with Defendant a direct threat to the health or safety of others, including the at-risk youth and families Defendant serves.

46. Even though a episode could recur, the facts that Plaintiff rarely had a episode, was aware of the symptoms of such an episode, had communicated those symptoms to her supervisor, and could seek treatment by her psychiatrist and, if necessary, a brief sick leave rendered improbable the risk of harm to herself or others.

47. Defendant did not consider Plaintiff's experience, skills, academic achievements, temperament, distinguished record as a clinician and student, and competent performance for it when assessing the risk of harm to herself or others.

48. Defendant did not consider medical and/or objective evidence in determining that Plaintiff's Bipolar Disorder constituted a direct threat to the health or safety of others.

49. Defendant relied on stereotypical notions about the onslaught of a episode with individuals who suffer from the type and degree of Bipolar Disorder Plaintiff has.

50. Defendant did not offer Plaintiff the opportunity to secure an opinion from her psychiatrist on whether she posed a direct threat to the health or safety of others.

51. Because she disagreed with the notion that her Bipolar Disorder posed a direct threat to the health or safety of others and believed that her experience, skills, academic achievements, temperament, distinguished record as a clinician and student, and competent performance for Defendant merited the accommodation of a short-term leave or other mitigating measures in the unlikely event that a episode recurred, Plaintiff refused to resign.

52. Plaintiff returned to work on August 21, 2014, and August 22, 2014.

53. On August 22, 2014, Defendant offered Plaintiff a position as a file clerk for 30 hours a week earning $10.14 per hour and without health insurance benefits.

54. Plaintiff refused such a demotion in compensation and an assignment so inconsistent with her licensure, experience, skills, academic achievements, temperament, distinguished record as a clinician and student, and competent performance for Defendant.

55. On Monday, August 25, 2014, Defendant terminated her and ordered her to clear out her desk.

56. Defendant replaced Plaintiff with an employee no better qualified than her but who neither had nor was misperceived as having a disability that impaired the safe and effective performance of her job duties.

57. At all times material to this Complaint apart from during her sick leave, Plaintiff could safely and substantially perform the essential functions of an Outreach Counselor.

58. As a direct and proximate result of her termination, Plaintiff has suffered emotional distress.

59. In terminating Plaintiff, Defendant acted with grossly reckless disregard toward Plaintiff's right not to be a victim of disability discrimination.

### V. Claim for Relief: Disability Discrimination under the Americans with Disabilities Act and the Ohio Laws Against Discrimination

60. Paragraphs 1 through 59 above are realleged and incorporated herein.

61. By both terminating Plaintiff based on its (a) misperception that her disability – bipolar disorder – prevented her from competently performing her job duties and (b) stereotypical perception that her bipolar disorder could not sufficiently be managed appropriately through medications prescribed by her psychiatrist and failing to engage in an interactive process

seeking a reasonable accommodation for mitigating the burden on its clients and its operations of future episodes, Defendant violated the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, as amended, and the Ohio Laws Against Discrimination, R.C. 4112.99.

## VI. Prayer for Relief

WHEREFORE, Plaintiff prays that this Court:

a. declare that Defendant has violated the Americans with Disabilities Act and Ohio Laws Against Discrimination; and

b. order such equitable relief as will make her whole; more than $25,000 in compensatory damages; more than $25,000 in punitive damages; prejudgment and post-judgment interest; costs; attorneys' fees, and such other relief as the Court may deem appropriate.

Respectfully submitted,

**OF COUNSEL:**
Louis A. Jacobs (002101)
*(LAJOhio@aol.com)*
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (510) 250-9007

By:*/s/ Edward R. Forman*
Edward R. Forman (0076651)
*(eforman@marshallandmorrow.com)*
John S. Marshall (0015160)
*(jmarshall@marshallandmorrow.com)*
Samuel M. Schlein (0092194)
*(sschlein@marshallandmorrow.com)*
MARSHALL AND MORROW LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

## JURY DEMAND

Plaintiff requests a trial by a jury of eight (8) persons.

By:/s/ *Edward R. Forman*
Edward R. Forman (0076651)

## CERTIFICATE OF SERVICE

On September 24, 2015, the undersigned submitted a copy of the foregoing for electronic filing which will constitute service on all registered users pursuant to Civ. R. 5(B)(2)(f).

/s/ *Edward R. Forman*
Edward R. Forman (0076651)

EEOC Form 161 (11/09)    U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:
5097 Schuylkill St.
Columbus, OH 43220

From: Indianapolis District Office
101 West Ohio St
Suite 1900
Indianapolis, IN 46204

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No | EEOC Representative | Telephone No |
|---|---|---|
| 22A-2015-02012 | Ethel M. Harmon, State & Local Program Manager | (317) 226-6144 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form)

Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act: This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

Equal Pay Act (EPA): EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

Webster N. Smith

4 2015

Enclosures(s)    Webster N. Smith,    (Date Mailed)
Director

cc: HR DIRECTOR
DIRECTIONS FOR YOUTH AND FAMILY
1414 Indianola Ave
Columbus, OH 43201